Good morning. May it please the Court, Charles Bonneau appearing for petitioner and appellant Katherine Potter. Your Honors, this appeal presents primarily the question of whether Ms. Potter has been subjected to an unforeseeable judicial enlargement of a state criminal statute. Specifically, whether she's been improperly convicted of implied malice murder based on the failure to act of a caretaker, her failure to intervene when the child's parent murdered the child. Since the focus of the Certificate of Appealability on this issue is the California Supreme Court's opinion in People v. Wisenhunt, I would like to address that opinion and put it in context as we see it and as we believe it will be applied retrospectively and in the future. In Wisenhunt, there was a claim that the defendant actually committed implied malice second-degree murder and not torture murder, not the torture murder that he was accused of. It devolved on the trial court to instruct on second-degree murder, implied malice, if there was a substantial evidence to support it. As the Supreme Court said, the trial court had a corresponding duty to instruct on all theories of a lesser-included offense, which finds substantial evidence in the record. Therefore, the trial court and the state supreme court after it were required to winnow the evidence to see if there was evidence to support implied malice second-degree murder. Now, central to this consideration is whether Wisenhunt was a caretaker. Now, the Supreme Court on the same page, 21744 Cal 4th, observed that certainly if a defendant has a duty to provide aid to a victim, his or her failure to do so resulting in the victim's death can give rise to a charge of involuntary manslaughter, not murder, but manslaughter. But, as noted, the jury was instructed on involuntary manslaughter, and it nonetheless found the defendant guilty of first-degree murder. In other words, Wisenhunt was a caretaker. That's essentially what they're saying here, because there was evidence that he was a caretaker. There was an instruction based on him being a caretaker. The jury didn't buy that, went with the special circumstances first-degree murder. But the question is whether he should have – whether there was enough evidence in the record to make him a caretaker. Indeed, the – that's where the evidence in Wisenhunt parallels significantly the evidence in our case. The – Let me ask you one question about Wisenhunt. The Court didn't deal with two other cases that – or at least one other case. I can't remember when the second one was decided. It didn't deal with Rolon or Burdette. Burdine. Burdine. Burdine. Burdine. Yeah. Now, that – those are California court of appeal decisions. They are entitled to respect their authority. The Supreme Court of California didn't say those cases are overruled. The Supreme Court of California didn't even acknowledge those cases. It would have been better if they had said something about them. So let me ask you this. Do you really think that the California Supreme Court overruled Burdine and Rolon? Here's what I think. Burdine and Rolon were both intentional murder cases where the defendants were convicted of intentionally murdering by failure to act. As to Burdine, he actually committed an affirmative act. But the point is that they had intent. Wisenhunt and Potter, neither one had intent. That's why I think those cases didn't jump to the mind. They're not on point. That's why it wasn't necessary to discuss them. Well, but the way I read them, they seem to say or hold that a failure to act can't be the basis for an implied malice second-degree murder conviction. I think that both of them were convicted on an intent theory. And in fact, Rolon makes the point, underlines that point. Those cases were not implied malice cases? Rolon wasn't. And the – and neither would – and since Burdine was a first-degree case, murder case, so they were both first-degree murder cases. So they had required intent. So we don't have that here. And we don't have that in Wisenhunt. Either – both of these scenarios require that the jury find implied malice, that the – that the defendant didn't intend that the victim be killed. Well, now, what do you think Potter's intent was? For a long period of time, she apparently participated in depriving this young man of food, all kinds of things that came close to torture. And then on the night of the murder, she did nothing to stop her partner from proceeding. What do you think her intent was? Our view of this case is that there was child abuse and that that went on for a period of weeks or months. And, indeed, she was convicted of that, and we have not challenged that on appeal or in this court. But there's child abuse, and then there's child abuse. And what happened on the night of August 20th went exponentially to a different level that no one could foresee. She certainly had no reason to think that the child's own father would take a golf club and beat him to death based on – even on the stuff that had happened in the past. This was not foreseeable. It wasn't a natural consequence. It was a maniacal act by Segis, the father. So we think her mental state was culpable for a period of time, but that it never rose to conscious disregard for this boy's life. What could the jury have found from the facts that were presented to it? It could have found that she was a caretaker. It could have found involuntary manslaughter based on her being a caretaker. But it could have found child abuse. I don't think there's any basis to think that she intended to see this boy dead. What does second-degree murder require? Second-degree murder in this context requires conscious disregard for the victim's life. Do we not have facts here from which the jury could have found that? The problem is that there is no affirmative act, and that's what was conceded by the court of appeal. But she was there. She was there. At the time, she was aware that terrible things were going on. I think if you look at the whole record, there's not evidence to support that she consciously disregarded this boy's death. She went to the police as soon as she could get away. And so I don't know. No, she didn't. She could have gone that night. She didn't go until the next day, and then she drove many miles to where her father was. She didn't go to the local police. No, the boy was dead by that point, but true. She didn't do a ---- So I'm just trying to look at it from what a reasonable juror could have found. The problem with this case is that there's no affirmative act. And the question is whether someone on notice, what if she had called me that night when she was in the apartment and said, you know, what must I do? I'm afraid he's going to kill me and my baby, but must I call the police? Must I call the police? That's the question. In the Wisenhunt case, the answer is no. I don't, you know, I'll be quite frank with you. I don't quite read Wisenhunt the way you do, especially in light of other California law that existed at the time. What decision of the United States Supreme Court do you say is violated? Whenever the state court goes beyond its prior authority and announces an unforeseeable judicial enlargement of a criminal statute, then that's a violation of Bowie v. City of Columbia. The state courts have a tendency to tailor their law to circumstances as they arise, and that indeed what happens. That's the Supreme Court. How does the Supreme Court phrase it? How does it phrase it? I mean, what's the standard set in that case? You say that's a decisive case. It's, quote, an unforeseeable judicial enlargement of a state criminal statute. In Bowie, it was the lunch counter cases. Before, it was not a crime, and so they decided to make it a crime. And this Court in Clark v. Brown held something similar with regard to arson cases. So you would say here, California, it was unforeseeable that they would expand the statute to include sort of passive caretakers standing by. That was unforeseeable. If it had been foreseeable, Wisenhunt would have picked it up. The child in Wisenhunt was 19 months old. We have a boy here that was 12 years old, and he could at least cry out or run away himself. And so the caretaker element is particularly acute for Wisenhunt. He was not only did the child live with him for four months, but he was left in the care. The child was the girl was left in his care for two hours, according to the mother and according to Wisenhunt, both testified to that. So he was clearly a caretaker. His version was that he failed to take her to the hospital when he should have, a failure to act, just very similar to what we have here. The California Supreme Court, with years to consider the question, and all of the leisure and all of the staff to look all this up, couldn't find a substantial evidence for implied malice murder liability. We think that Ms. Potter, in terror, in an apartment in the middle of the night, and trying to figure out whether there's enough, whether she has to put her own life at risk to save this child, would have surely been entitled to reach the same conclusion. Do you want to save some time for rebuttal? I do, thank you. Thank you. Good morning, Your Honors. David Andrew Eldridge, Deputy Attorney General for Respondent. To be clear, what was, as we pointed out in the briefing here and below, the question of what state law allowed as a valid murder theory was decided by the California Court of Appeal on direct appeal. Petitioner cannot ask this court to go recanvassing the law, whether statutory or cases, to reach a different conclusion. Rather, the Court of Appeal's decision on state law is binding. So all the arguments as to what he thinks, whether he thinks Wisenhunt is consistent with the Court of Appeal's decision here is irrelevant. What do you say about the Supreme Court saying the state can't unforeseeably expand the law? Well, first, the Bowie claim is unexhausted. It was not presented to the California Court of Appeal at all. To the contrary, what Petitioner said in the California Court of Appeal was that the matter was debatable. Bowie said that when the law is clearly to the contrary, for example, in Bowie, the statute that was used to convict the defendant had unmistakably been interpreted entirely contrary to how it was interpreted in Bowie itself. And they said that is a problem and that indeed the state, they did not challenge the state's ability to say that is a valid theory, but rather they said because it was unforeseeable that you would change the law in that way from what was contrary before that it couldn't be lawfully applied to him. Well, there was no argument here in the California Court of Appeal that prior law could not possibly lead to this conclusion. To the contrary, the petition for review itself said it's a matter of debate. And indeed, there was a case. It will be burdened or burdened, I'm not sure how it's pronounced. Burdened or whatever it is, yes. Which it said precisely that. By the way, counsel is in error in stating that burden was a first-degree murder case. Okay. So the case unmistakably was there. It may have been a first-degree murder case to start out with, but they were instructed on second-degree murder with implied malice. And they defied implied malice as an affirmative. The instruction that was given defined implied malice as an act, an affirmative act. But the court went on to say the instructions correctly stated the law. The omission of a duty is in law the equivalent of an act. And when death results, the standard for determining the degree of homicide is identical. So they said, they put it on notice that failure to act is the equivalent. I fully agree, Your Honor. But for the sake of completeness, however, Wisenhunt did not hold that the problem in the defendant's theory was substantively that an act cannot be the equivalent, a failure to act cannot be the equivalent of an act. Rather, Wisenhunt pointed out, as the district court pointed out below, he failed to brief that point adequately by providing authority. And when the court did discuss what was lacking in terms of substantial evidence, it wasn't the act problem at all. It was the knowledge problem that there was no substantial evidence of. They said their first point was procedural, failure to provide authority. And when they finally discussed what was lacking evidence-wise, they said the testimony didn't provide substantial evidence that he knew not taking, not immediately taking Keach to the hospital would result in death. So it was the knowledge problem where there was a lack of actual evidence. As to the act problem, there was a lack of authority cited. I do not have any further points that I wish to make, Your Honor. I don't have any further questions. I don't know if my colleagues do. Thank you, Your Honor. Thank you, Your Honor. I have two points. One is that the California Supreme Court has since treated starvation of a victim, where you have control over a child and the child can't walk to the store and get her own food. That's an act. That's an act. They've spoken of it as an affirmative act. And that makes it difficult to say that a person is on notice, that any failure to act, failure to intervene, put yourself in a life-threatening situation, stand between the natural parent who's beating the child to death and put your own life on the line, that that's the kind of that failure to act is an act. I mean, it seems like an oxymoron, frankly. Is there anything in the evidence to suggest that Beater had abused the wife before, possibly the wife? Certainly. There's a lot of evidence that he abused her. He beat her. That he beat her. Well, she had bruises, and she said he hit her with a bottle. So I think there's plenty of evidence that he beat her. There was a spousal abuse syndrome instruction, correct? Well, yeah. There was actually battered woman syndrome. But the jury didn't buy that, apparently. Well, you know, the way they were instructed, duress is not a defense. Necessity wasn't even mentioned. So I think it's a little too pat to say that they rejected all of that evidence. They were actually told that duress is only a defense to child abuse and not to murder. So as far as we're talking about here, she could have been under a great deal of duress in the opinion of the jury. She could have been in a necessity situation. None of that would have counted for her. The Burden opinion has come up, 1977 opinion. Interesting that there was a long gap where this didn't come up very often. Then you have Wisenant, and they don't even recognize Burden or Rowan as apparently being relevant. I think that's a real conundrum, and it really poses the question, what would one say is the state of the law? I haven't heard the Attorney General saying what the law is on this subject yet. Thank you. The defense, the omission of that violated what Supreme Court case? I'm sorry. What United States Supreme Court case? Yes. The case of Nedder v. United States is the – would be the closest involving an element. Now, whether a defense is, that comes up in Matthews v. United States, which is a Supreme Court decision, and it's been applied by this Court in Condie v. Henry. No, we need the Supreme Court. I don't think we've got good presidents. We need the Supreme Court. Matthews v. United States involved in entrapment defense. Well, you understand the problem. I certainly feel it, that we are constricted terribly by Endeavor, and yet we have to apply it. It's a very tough standard to meet. Are you representing a defendant pro bono? No. I'm appointed under the CJA. Well, that's very good of you to take up. I think both this case and the previous one, they were very hard cases for counsel to take up and make a case out of. Well, with all respect, I think it's more than that. I think she's been unjustly convicted of murder, Your Honor. Well, good. Thank you. Thank you, counsel. We appreciate your arguments. The matter is submitted at this time.
judges: Fletcher, Noonan, Paez